68 F.3d 1065
 1995 Copr.L.Dec. P 27,474, 36 U.S.P.Q.2d 1424,
43 Fed. R. Evid. Serv. 173
 MARY ELLEN ENTERPRISES, INC., Plaintiff-Appellee,
v.
CAMEX, INC., a corporation; Jay Columbus; Victor
Benedetto, Defendants-Appellants.
Mary Ellen PINKHAM, Plaintiff-Appellee,
v.
CAMEX, INC., a corporation; Jay Columbus; Victor
Benedetto, Defendants-Appellants.
L'eggs Brands, Inc., Defendant,
L'eggs Brands, Inc., Third Party plaintiff.
CAMEX, INC.; Jay Columbus; Victor Benedetto, Third Party
Plaintiffs-Appellants,
v.
MARY ELLEN ENTERPRISES, INC., Third Party Defendant-Appellee.
Mary Ellen PINKHAM, Plaintiff-Appellee,
v.
CAMEX, INC., a corporation; Jay Columbus; Victor
Benedetto, Defendants-Appellees,
L'eggs Brands, Inc., Defendant-Appellant,
L'eggs Brands, Inc., Third Party Plaintiff-Appellant.
CAMEX, INC.; Jay Columbus; Victor Benedetto, Third Party
Plaintiffs-Appellees,
v.
MARY ELLEN ENTERPRISES, INC., Third Party Defendant-Appellee.
 Nos. 942672, 94-2730 and 94-2732.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 15, 1995.
Decided Oct. 13, 1995.
 
 Roderick Enns, Winston-Salem, North Carolina, argued (Michael R. Cunningham, on the brief), Minneapolis, Minnesota, for appellant L'eggs.
 Robert S. Meloni, New York City, argued, for appellants Camex, Jay Columbus and Victor Benedetto.
 Frank R. Berman, Minneapolis, Minnesota, argued (Sandra K. Kensy, Minneapolis, Minnesota, on the brief), for appellee Mary Ellen Enterprises, Inc.
 Before MAGILL, HEANEY and JOHN R. GIBSON, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 We have before us again appeals from the controversy surrounding the distribution of 300,000 copies of Mary Ellen's Best of Helpful Hints by L'eggs Brands, Inc. In the first appeal, we affirmed the entry of summary judgment in favor of Mary Ellen Pinkham on her copyright infringement claim against Camex, Inc., and its officers, Jay Columbus and Victor Benedetto. Pinkham v. Sara Lee Corp., 983 F.2d 824 (8th Cir.1992). We reversed the district court's denial of summary judgment against Sara Lee, the corporate parent of L'eggs, and on remand, the district court[1] entered summary judgment against L'eggs.[2] In a separate suit, Mary Ellen Enterprises, a corporation wholly-owned by Pinkham, brought diversity claims against Camex, Columbus and Benedetto alleging fraud, breach of contract, and breach of fiduciary duty. The court consolidated the trial of Pinkham's copyright damages with the trial of Mary Ellen Enterprises' diversity claims. The jury awarded Pinkham $502,000 in copyright damages. The jury also found Camex liable on all three diversity counts, awarding a total of $1,330,600 in damages. The court reduced the diversity award to $547,900. On appeal, the Camex defendants argue that there is no evidence to support the finding of fraud or the damage awards, and that the court abused its discretion in consolidating the trials of Pinkham's copyright damages with Mary Ellen Enterprises' diversity claims. Camex and L'eggs argue that there is insufficient evidence of actual damage to support Pinkham's copyright damages award, and that the district court abused its discretion in excluding relevant character evidence and in awarding and apportioning attorneys' fees. L'eggs argues that the court should have awarded it full indemnity from the Camex defendants. We affirm.
 
 
 2
 This dispute arises from book promotions gone awry. In L'eggs' first appeal, we explained in detail Pinkham's copyright infringement claim against Camex, Benedetto, and Columbus, agents for her book, and L'eggs, who distributed her book as a promotion in selling L'eggs hosiery. Pinkham owned the copyright to Mary Ellen's Best of Helpful Hints. Camex, through Columbus and Benedetto, arranged for the sale of 13,000 copies of the Helpful Hints book to L'eggs. Thereafter, without Pinkham's knowledge, Camex sold an additional 300,000 copies to L'eggs. After the district court entered judgment for Pinkham on her copyright claim, the jury awarded Pinkham $300,000 in actual damages against the Camex defendants and L'eggs; $66,000 in lost profits against the Camex defendants; and $136,000 in lost profits against L'eggs. The jury found that Camex must indemnify L'eggs in the amount of $122,400 and that Columbus must indemnify L'eggs in the amount of $13,600.
 
 
 3
 In addition to the L'eggs transaction, Mary Ellen Enterprises had further complaints against the Camex defendants in their handling of other book transactions. Mary Ellen Enterprises sued the Camex defendants for fraud, breach of contract, and breach of fiduciary duty. The jury found liability against Camex on all counts, awarding Mary Ellen Enterprises $182,700 for breach of contract, $482,700 for fraud, and $665,200 for breach of fiduciary duty. The jury also found Columbus liable for breach of fiduciary duty, awarding $20,800 to Mary Ellen Enterprises. Camex prevailed on its counterclaim for breach of contract, entitling it to a $23,200 offset in the judgment against it. "To avoid double recovery," the court reduced the total judgment on the diversity claims, entering an aggregate judgment of $524,700 on all three diversity claims. L'eggs and the Camex defendants now appeal.
 
 I.
 
 4
 The Camex defendants argue that there was no evidence of fraud. They argue the jury verdict on the fraud count cannot stand because there is insufficient evidence of fraud as a matter of law and because the district court erred in denying their motion for a new trial.
 
 
 5
 We view the evidence in the light most favorable to the jury verdict, assuming as true all facts which Mary Ellen Enterprises' evidence tended to prove. Farley v. Henson, 11 F.3d 827, 831 (8th Cir.1993); White v. Pence, 961 F.2d 776, 779-80 (8th Cir.1992).
 
 
 6
 The evidence, and its reasonable inferences, shows that the Camex defendants failed to disclose to Mary Ellen Enterprises that L'eggs purchased 300,000 copies of the Helpful Hints book. Camex argues that the evidence that Pinkham released the printing plates for the book to Camex and directed Camex to retain the plates negates a finding of fraud because Camex did not induce Mary Ellen Enterprises to send the printing plates for a fraudulent purpose. That Mary Ellen Enterprises sent the printing plates to Camex does not negate the jury's finding of fraud. Although Mary Ellen Enterprises originally sent the printing plates to Camex, it did so based on Camex's representation that it would print 13,000 test market copies of the book. There is evidence that Camex failed to inform Mary Ellen Enterprises that L'eggs ordered an additional 300,000 copies and paid Camex $155,000. Indeed, there is evidence that Columbus told Pinkham that the book was unsuccessful in its test market and that the book had "no future" with L'eggs. Although Mary Ellen Enterprises received a check for its share of the profit from the L'eggs test, Camex led Pinkham to believe that the relationship with L'eggs ended after unsatisfactory test market results.
 
 
 7
 Mary Ellen Enterprises also claimed Camex fraudulently handled a transaction with Outlet Books. Camex entered into an agreement with Outlet Books to create and publish 45,000 copies of two baby books. The agreement also provided that Pinkham would write an introduction for the two books. There was evidence that Camex described a different version of the Outlet deal to Mary Ellen Enterprises. Columbus told Pinkham that he had an order for 20,000 copies of two of her baby books and asked her to release the printing plates to him. Pinkham agreed to this sale in exchange for a $5,000 royalty and a 50% profit share. There was evidence that Camex did not tell Mary Ellen Enterprises that it actually had an order for 45,000 books, had received a $29,000 advance, and that it planned to use the text from Pinkham's baby books to fulfill its own agreement with Outlet.
 
 
 8
 Despite this evidence, Camex contends that Pinkham agreed to publish two of her baby books in repackaged form. For support, it cites an April 23, 1984 letter Camex wrote to Mary Ellen Enterprises, informing it that "Outlet books wants 25,000 each of the two Baby Books." The letter also stated, however, that the deal was not finalized, and Camex later wrote Pinkham informing her that it had an order for "20,000 books total." This letter supports the jury's finding of fraud, as a reasonable juror could conclude that the letter did not accurately describe the deal Camex had with Outlet. Camex actually had an order for 45,000 books and the order was not for Pinkham's books, but books created by Outlet.
 
 
 9
 We similarly reject Camex's argument that Mary Ellen Enterprises cannot prove fraud for the baby book transaction because there is no evidence of damage, as required by Minnesota law. See Berg v. Xerxes-Southdale Office Bldg. Co., 290 N.W.2d 612, 615 (Minn.1980). Camex points out that Pinkham conceded that her baby books were "unpopular." Pinkham's concession that the baby books were unpopular does not mean that the books were worthless. Indeed, the evidence shows that Camex received a $19,000 advance from Outlet books and anticipated receiving a net profit of $25,780.
 
 
 10
 Finally, there is evidence to support fraud in Camex's handling of the sale of overstock books. In the spring of 1985, Mary Ellen Enterprises was experiencing liquidity problems. Mary Ellen Enterprises owed Norwest Bank $400,000, and Norwest Bank had a security interest in Mary Ellen Enterprises' inventory. Camex agreed to sell Mary Ellen Enterprises' inventory of overstock books and to sign an agreement to remit the sale proceeds to the bank. In March 1985, Camex obtained a purchase order to sell $107,000 worth of overstock books to Waldenbooks and Bookthrift. There was evidence from which a reasonable juror could conclude that Camex sold the books with the intent not to pay Mary Ellen Enterprises or the bank. Camex never signed the bank agreement, sold $107,000 worth of the overstock books, and did not pay Mary Ellen Enterprises or the bank. Camex argues Mary Ellen Enterprises proved no fraud in this transaction because the purchase order stated that payment was not due for ninety days from the receipt and acceptance of inventory. Camex argues there can be no intent to defraud because Camex had no obligation to pay the bank or Mary Ellen Enterprises until June 1985. Whether Camex intended to ultimately pay Mary Ellen Enterprises was a question for the jury to decide. The jury could accept or reject Camex's explanation for its delay in paying Mary Ellen Enterprises. There is sufficient evidence to support the jury's finding of fraud.
 
 II.
 
 11
 Camex and L'eggs attack the damage awards on several fronts. First, Camex and L'eggs contend that the $300,000 award in the copyright action cannot stand because Pinkham failed to prove causation. Second, Camex argues the award on the diversity counts is not supported by the evidence, is excessive, and constitutes an award of double damages.
 
 A.
 
 12
 Camex and L'eggs argue that there is no evidence of actual damages to Pinkham in the copyright action. They do not appeal the lost-profits award, but say there is simply no competent evidence that the distribution of the book caused any actual damages to Pinkham.
 
 The Copyright Act provides:
 
 13
 The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.
 
 
 14
 17 U.S.C. Sec. 504(b) (1988).
 
 
 15
 The jury returned separate verdicts in the copyright action, awarding Pinkham $202,000 in lost profits ($66,000 assessed to Camex and $136,000 assessed to L'eggs), and $300,000 in actual damages. Camex and L'eggs argue that Pinkham failed to produce competent evidence of actual damages, beyond the lost profits, as a result of the infringement. In particular, they argue that Pinkham did not produce evidence of the book's sales before or after the infringement, or identify any specific lost future sale. Camex and L'eggs contend that actual damages cannot be based on Pinkham's unsupported assertion that the infringement "tarnished" her book, and that this case is indistinguishable from Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co., 978 F.2d 430 (8th Cir.1992). In that case, the district court awarded an architect the infringer's profits based on the use of copyrighted architectural drawings, but refused to also award actual damages. Id. We affirmed the district court's refusal to award actual damages, reasoning that the "claim of actual damages over and above the infringer's profits was simply too speculative." Id. at 432.
 
 
 16
 There was evidence in this case to support an award of actual damages beyond the lost-profits award. Pinkham presented evidence that a book is usually only used once as a premium and that the book's value decreases following its use as a premium. Pinkham testified that L'eggs' specific use of the book substantially diminished its future value because L'eggs used the book in an attempt to sell "seconds" or damaged hosiery, offered the book "free" with any purchase no matter how small, and identified the book with a $3.95 retail price rather than the $4.95 retail price then in effect. This evidence demonstrates damage to the copyright itself and is more specific than that offered in Pfanenstiel Architects, Inc., 978 F.2d at 432.
 
 
 17
 Contrary to Camex's assertions, there was evidence comparing the book's value before and after the infringement. Pinkham testified that the book had a $2 to $3 million premium value based on the book's prior $32 million in retail sales, and the fact that her endorsement was worth $500,000. A literary agent testified that as of 1985, the market value of the book's premium rights was $2 million. Pinkham and the agent explained that premium rights of the book consisted of two components: the actual value of the book as well as the value of Pinkham's implied endorsement of the associated product. The agent testified that the book had an actual value of $1 per book, and an implied endorsement value of $300,000 to $350,000. There was also evidence that after the infringement Pinkham sought commercial opportunities for the book and was only able to sell a revised version of the book five years later for $1.00 per copy. A copyright owner is competent to testify as to the copyright's value and to the extent to which the defendant has injured the copyright's value. See, e.g., Fitzgerald Pub. Co. v. Baylor Pub. Co., 807 F.2d 1110, 1118-19 (2d Cir.1986). There was sufficient evidence to support the jury's award of actual damages.
 
 B.
 
 18
 Camex also argues that there is no evidence to support the damage awards against Camex for breach of fiduciary duty, fraud, and breach of contract and against Columbus for breach of fiduciary duty, and that the awards are clearly excessive and amount to a double recovery.
 
 
 19
 The jury found against the Camex defendants and awarded Mary Ellen Enterprises $482,700 for fraud, $182,700 for breach of contract, and $665,200 for breach of fiduciary duty. "[T]o avoid double recovery," the court reduced the awards and entered an aggregate judgment of $524,700 (including a $23,200 offset for the breach of contract award in Camex's favor).
 
 
 20
 Camex points out that Pinkham's copyright claim and Mary Ellen Enterprises' fraud claim are based on the L'eggs promotion. Camex contends that Pinkham's $492,000 copyright award cannot be separated from Mary Ellen Enterprises' $482,700 fraud award. Camex points out that the jury's award on the fraud claim equals the jury's breach of contract award and actual damages award for copyright infringement, and that this demonstrates that the awards are duplicative. See, e.g., Lasercomb America, Inc. v. Reynolds, 911 F.2d 970, 972 n. 3 (4th Cir.1990). Camex also references Mary Ellen Enterprises' complaints which sought only $107,655 for the overstock book transaction, $53,410 for the baby book transaction, and $19,000 for the Outlet Books transaction. Although the Camex defendants acknowledge that the prayers for relief do not determine whether the awards are excessive, they say that the prayers for relief help to show that the awards are excessive.
 
 
 21
 The Camex defendants concede that the threshold for reversing a damage award is high, but argue that this court may do so when, as here, the evidence utterly fails to provide any basis for the jury's award of damages. First Nat'l Bank & Trust Co. v. Hollingsworth, 931 F.2d 1295, 1306 (8th Cir.1991). In determining whether the award is excessive, we are guided by Minnesota law. Keenan v. Computer Assocs. Int'l, Inc., 13 F.3d 1266, 1273 (8th Cir.1994). However, we ascertain no real distinction between Minnesota and federal law on this question. Compare Johnson v. Washington County, 518 N.W.2d 594, 602 (Minn.1994) (verdict will be set aside as excessive if it "shocks the conscience") with Farley, 11 F.3d at 834 (award is excessive when it constitutes plain injustice or a monstrous or shocking result). Once liability is established, mathematical certainty in computing damages is not required; there must only be a reasonable basis upon which to approximate the amount. See Cashman v. Allied Prods. Corp., 761 F.2d 1250, 1253 (8th Cir.1985).
 
 
 22
 We are not persuaded that the fraud award in the diversity suit and actual damages award in the copyright suit are duplicative. First, the district court reduced the jury's awards on the diversity claims, including the fraud award, by $782,700. Second, the court instructed the jury that the actual damages award in the copyright action is measured by the decline in the copyright's value as a result of the infringement, and that fraud damages are limited to "out-of-pocket loss." Although some portion of these awards may overlap,[3] there is distinct evidence supporting both theories of recovery, and the district court cured any duplication when it reduced the damage awards on the diversity counts. Cf. Lasercomb America, Inc., 911 F.2d at 980-81. See also Paramount Pictures Corp. v. Metro Program Network, Inc., 962 F.2d 775, 778-80 (8th Cir.1992) (authorizing recovery for copyright infringement and breach of contract); Brooks v. Doherty, Rumble & Butler, 481 N.W.2d 120, 128-29 (Minn.1992) (allowing recovery under Minnesota law for fraud and breach of contract as long as evidence shows the damages are "separate and distinct"). This reasoning also answers Camex's assertion that Mary Ellen Enterprises could not recover for fraud because it had no rights in the Helpful Hints book. Likewise, Camex's argument that the prayers for relief show that the award is excessive loses force with the district court's reduction of the diversity awards.
 
 
 23
 The Camex defendants have not shown that the $547,900 award is duplicative, unsupported by the evidence, or excessive.[4] The record in the diversity action supports the $547,900 aggregate award.
 
 III.
 
 24
 Camex and L'eggs also argue that the district court abused its discretion in awarding attorneys' fees and in apportioning the attorneys' fees between L'eggs (40%) and the Camex defendants (60%).
 
 
 25
 The court may award reasonable attorneys' fees to the prevailing party in a copyright action. 17 U.S.C. Sec. 505. The decision to award attorneys' fees in a copyright action is committed to the district court's discretion. Fogerty v. Fantasy, Inc., --- U.S. ----, ----, 114 S.Ct. 1023, 1033, 127 L.Ed.2d 455 (1994); Applied Innovations, Inc. v. Regents of the Univ. of Minn., 876 F.2d 626, 638 (8th Cir.1989). Among the factors a district court can consider in deciding whether to award attorneys' fees are "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Fogerty, --- U.S. at ---- n. 19, 114 S.Ct. at 1033 n. 19.
 
 
 26
 Citing Fogerty, the district court ruled that it was appropriate to award attorneys' fees. Camex and L'eggs argue that the court abused its discretion in awarding attorneys' fees. They contend that they litigated in good faith against Pinkham's unreasonable demands for damages, and that this militates against an award of attorneys' fees.
 
 
 27
 L'eggs and the Camex defendants also argue error in the court's apportionment. Camex points out that the jury found that Camex was not a wilful infringer. L'eggs, on the other hand, cites the district court's findings that L'eggs was an "innocent" infringer, and would not "have found itself in this lawsuit had it not been for the acts of the Camex defendants," as support for its position that L'eggs has no liability for attorneys' fees.
 
 
 28
 The district court was well within its discretion in awarding and apportioning attorneys' fees. Bad faith or wilfulness is not a prerequisite to an award of attorneys' fees. See RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co., 845 F.2d 773, 780 (8th Cir.1988). Although the district court made some findings that L'eggs' conduct was more innocent than that of the Camex defendants, it is undisputed that L'eggs made no effort to verify whether Pinkham agreed to L'eggs' distribution of the copyrighted material. In addition, there is evidence in the record suggesting that L'eggs contributed to discovery delays. The district court did not abuse its discretion in awarding or apportioning attorneys' fees.
 
 IV.
 
 29
 L'eggs argues that it is entitled to complete indemnity from the Camex defendants as a matter of law. L'eggs argues it is entitled to indemnification based on the unqualified representation of Columbus and Benedetto that they had Pinkham's authorization to distribute the book.
 
 
 30
 After this court's decision in the first appeal, the district court found L'eggs to be a direct infringer, not vicariously liable through Camex. A party claiming indemnification must demonstrate that it committed no wrong, but by virtue of some relationship with the joint tort feasor or by obligation imposed by law, was nevertheless held liable to the injured party. See William L. Prosser & W. Page Keeton, The Law of Torts Sec. 51 (5th ed. 1984).
 
 
 31
 L'eggs argues the fault for the resulting infringement lies squarely and solely with the Camex defendants. L'eggs had notice of Pinkham's copyright, however, and failed to confirm permission to use the copyrighted material with Pinkham. L'eggs is not entitled to complete indemnification as a matter of law. See Olan Mills, Inc. v. Linn Photo Co., 23 F.3d 1345, 1348 (8th Cir.1994) (infringer cannot rely on indemnification agreement because copyrighted work clearly marked with copyright notice).
 
 V.
 
 32
 Camex also argues that the district court abused its discretion by consolidating the copyright and diversity actions. After this court reversed the district court's denial of summary judgment against Sara Lee in the copyright action, the district court found that the interests of judicial economy dictated that the cases be consolidated. Camex contends that the copyright damages evidence would have been otherwise inadmissible in a separate trial on the diversity claims. Camex contends that the complicated evidence on copyright damages confused the jury.
 
 
 33
 We will reverse a district court's decision to consolidate for an abuse of discretion. See Enterprise Bank v. Saettele, 21 F.3d 233, 235 (8th Cir.1994).
 
 
 34
 Although there was evidence of other transactions in the diversity case, the copyright claim and the diversity claims were undeniably tied together by the L'eggs transaction. See Fed.R.Civ.P. 42(a) (authorizing joint trial of actions involving "a common question of law or fact ... to avoid unnecessary costs or delay"). In addition, the court instructed the jury that the trial involved two separate actions, and the jury verdict form clearly differentiated between the two actions. The district court did not abuse its discretion in consolidating the issue of copyright damages with the trial of the diversity claims.
 
 VI.
 
 35
 The Camex defendants argue that the district court abused its discretion in excluding evidence of Pinkham's alcoholism.
 
 
 36
 At various times during trial, Camex and L'eggs sought to introduce evidence that Pinkham was an alcoholic and received treatment for her alcoholism during late March 1983 and April 1984. Camex sought to introduce a book and a magazine article in which Pinkham discussed her alcoholism, including her memory problems, blackouts, and inability to perform her job. Camex argues this evidence was significant, as much of the case turned on conflicts between Pinkham and Columbus as to what Columbus told Pinkham about the various book deals.
 
 
 37
 Outside the jury's presence, Pinkham admitted that she was an alcoholic and had undergone treatment for her alcoholism at the end of March 1984. Pinkham explained that although she drank, she did not drink "on the job," and only experienced blackouts while she was "actively drinking," and not while she was working. She denied having any problems with her memory.
 
 
 38
 The court excluded the testimony about Pinkham's alcoholism, ruling that it was irrelevant because there was no showing that Pinkham's recollection was impaired and that the evidence was unduly prejudicial.
 
 
 39
 We have carefully reviewed Pinkham's testimony and cannot conclude that the district court abused its discretion in excluding the evidence about Pinkham's alcoholism. As the district court reasoned, the evidence about Pinkham's alcoholism does not tend to show that Pinkham had any difficulty understanding or recalling events related to her dealings with Camex. The court did not abuse its discretion in excluding the evidence.
 
 
 40
 We affirm the district court's judgment.
 
 
 
 [1]
 The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota
 
 
 [2]
 During trial, the parties substituted L'eggs as defendant for the Sara Lee entities
 
 
 [3]
 Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197 (9th Cir.1989), does not hold that a plaintiff may not recover for copyright infringement and cognate causes of action. In that case, the jury made separate damage awards on claims of copyright infringement and Lanham Act violations, but found the Lanham Act damages duplicative of the copyright damages. Id. at 201. After the Ninth Circuit reversed the judgments on both claims, the court did not address the duplicate damages finding. Id. at 210
 
 
 [4]
 The record also supports the jury's award of $20,800 against Columbus for breach of fiduciary duty. Viewing the record in the light most favorable to Mary Ellen Enterprises, there is evidence that Columbus earned commissions of at least that amount