No. 95-1705

Mary Ellen Pinkham,               *
                                            *
        Appellee,          *
                                            *
     v.                     *
                                          *
Camex, Inc., a corporation;   *
Jay Columbus; Victor Benedetto,  *
                                          *
        Defendants,       *
                                          *
L'Eggs Brands, Inc.,        *
                                          *
        Appellant,        *
                                          *
L'Eggs Brands, Inc.,        *
                                          *
        Third Party Plaintiff- *
        Appellant,        *
                                          *
Camex, Inc.; Jay Columbus;    *
Victor Benedetto,          *
                                          *
        Third Party Plaintiffs,*
                                          *
     v.                     *
                                          *
Mary Ellen Enterprises, Inc.,   *
                                          *
        Appellee.        *

No. 95-2353

Appeals from the United States
District Court for the
District of Minnesota

Mary Ellen Pinkham,               *       [TO BE PUBLISHED]
                                          *
        Appellant,        *
                                          *
     v.                     *
                                          *
Camex, Inc., a corporation;   *
Jay Columbus; Victor Benedetto,  *
                                          *

```
        Defendants,              *
                                 *
L'Eggs Brands, Inc.,             *
                                 *
        Appellee,                *
                                 *
L'Eggs Brands, Inc.,             *
                                 *
        Third Party Plaintiff-   *
        Appellee,                *
                                 *
Camex, Inc.; Jay Columbus;       *
Victor Benedetto,                *
                                 *
        Third Party Plaintiffs,  *
                                 *
    v.                           *
                                 *
Mary Ellen Enterprises, Inc.,    *
                                 *
        Appellant.               *
```

_____

Submitted:  March 1, 1996

Filed:  May 21, 1996
_____

Before McMILLIAN, WOLLMAN, and HANSEN, Circuit Judges.
_____

PER CURIAM.

L'Eggs Brands, Inc. (L'Eggs) appeals from the postjudgment order of the District Court[1] for the District of Minnesota awarding Mary Ellen Pinkham $229,420.13 in attorney's fees and $8,702.46 in costs.  Pinkham cross-appeals from the order denying expert witness fees in excess of the statutory amount under 28 U.S.C. § 1821.  For the reasons discussed below, we affirm.

_____

[1]The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Franklin L. Noel, United States Magistrate Judge for the District of Minnesota.

-2-

Pinkham brought a copyright infringement case against L'Eggs and others. Pinkham's corporation, Mary Ellen Enterprises, Inc., brought a diversity action against all the defendants except L'Eggs. The two cases were consolidated for trial, and the jury awarded damages against defendants in both cases. We affirmed. Mary Ellen Enters. v. Camex, Inc., 68 F.3d 1065 (8th Cir. 1995). We also affirmed the decision to award attorney's fees in the copyright action under 17 U.S.C. § 505[2] and to apportion the fees between L'Eggs (40%) and the other defendants (60%).

In support of Pinkham's motion for attorney's fees and costs, Pinkham's counsel attested to their trial experience, range of individual billing rates, total number of hours at each rate, and the novelty and number of issues involved. In opposition, counsel for L'Eggs attested Pinkham had refused to produce documents reflecting any retainer agreement she had with counsel and any apportionment of time between the diversity and copyright cases. L'Eggs attached a survey of billing rates of Minnesota law firms, showing hourly billing rates lower than those charged by Pinkham's counsel.

The district court concluded, based on the billing rate survey, that the hourly rates charged were "out of step with the local legal community" and reduced them. As for the allocation of time between the diversity and copyright cases, the district court agreed with Pinkham that nearly all of the work was necessary to both actions, concluded that 10% of the billed time should be

---

[2]Title 17 U.S.C. § 505 provides:

In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

allocated solely to the diversity case, and reduced the fee by $25,491.13.

The district court also concluded, inter alia, that costs were limited to those identified in 28 U.S.C. § 1920, that expert witness fees in excess of the statutory amount (set in 28 U.S.C. § 1821 at $40 per day) were not recoverable, and that costs for long distance telephone calls, faxes, messengers, and express mail were recoverable. The district court reduced the cost award accordingly. These appeals followed.

We review awards of attorney's fees and costs for abuse of discretion. Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 122 (8th Cir. 1987). We are bound by the district court's factual findings on the fee issue unless they are clearly erroneous; review of the applicable legal principles is plenary. Id.

## I.   Attorney's Fees

L'Eggs argues the district court abused its discretion in establishing reasonable attorney's fees in the absence of evidence of an agreement between Pinkham and her attorneys. We conclude that the copyright statute provides for "reasonable" fees based on a lodestar figure represented by the reasonable hourly rate multiplied by the hours expended in the litigation; the actual fee arrangement between the client and the attorney is immaterial. In any event, the monthly statements counsel provided Pinkham and her partial payments on that account sufficiently indicate Pinkham was obligated to pay her attorneys. The amount of the fee to be awarded under the statute is left entirely to the district court's discretion. Factors that courts may consider in awarding attorney's fees include "`frivolousness, motivation, objective reasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" Fogerty v.

Fantasy, Inc., 114 S. Ct. 1023, 1033 n.19 (1994) (quoting with approval Lieb v. Topstone Indus., Inc., 788 F.2d 151, 156 (3d Cir. 1986)). We conclude that the district court did not abuse its discretion in awarding "reasonable" attorney's fees to Pinkham.

## II.   Allocation Between Copyright and Diversity Actions

L'Eggs argues the district court abused its discretion in deciding to apportion to the diversity action only those hours dedicated "solely" to it and to allocate to the copyright action hours which were necessary to both actions. We conclude that the determination that 90% of the billed time was necessary to both actions is sufficient to recover for all the time spent in joint preparation. See Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp., 995 F.2d 414, 420 (3d Cir. 1993) (if fees incurred in other litigation were for work product actually utilized, time spent in other litigation was "inextricably linked" to issues in present litigation, and plaintiff was not previously compensated, court may include all fees); Nanetti v. University of Ill. at Chicago, 944 F.2d 1416, 1419 (7th Cir. 1991) (time for joint preparation allowed even where only one claim produces recovery). Accordingly, we affirm the attorney's fees award.

## III. Costs

We agree with L'Eggs that costs for long distance and fax ($4,664.89) and for messenger and express mail ($1,606.10) are not "exemplification and copies of papers necessarily obtained for use in the case" under 28 U.S.C. § 1920(4). We believe that their inclusion was harmless error, however, because such costs were reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys, and thus should have been included as part of the reasonable attorney's fees awarded. See West Virginia Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 87 n.3 (1991); Chalmers v. City of Los Angeles, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986) (out-of-

pocket litigation expenses reimbursable as part of attorney's fees); <u>Laffey v. Northwest Airlines, Inc.</u>, 241 U.S. App. D.C. 11, 746 F.2d 4, 30 (1984) (same), <u>cert. denied</u>, 472 U.S. 1021 (1985); <u>Northcross v. Board of Educ.</u>, 611 F.2d 624, 639 (6th Cir. 1979) (reasonable out-of-pocket expenses incurred by attorney which normally are charged to fee-paying client were includable in 42 U.S.C. § 1988 "attorney's fee" award), <u>cert. denied</u>, 447 U.S. 911 (1980).

As for Pinkham's cross-appeal concerning expert witness fees, 28 U.S.C. § 1821 provides that, "[e]xcept as otherwise provided by law," witness fees and allowances are limited to that set forth in the statute ($40 per day).  Pinkham argues that 17 U.S.C. § 505's "full costs" language comes within the "otherwise provided by law" exception and is sufficient authority to exclude it from the cost limitations set forth in 28 U.S.C. §§ 1920 and 1821.  In support, Pinkham argues that 17 U.S.C. § 505 was not at issue in <u>West Virginia Univ. Hosps., Inc. v. Casey</u>, 499 U.S. at 87 (42 U.S.C. § 1988 expert witness fees limited by §§ 1920 and 1821(b)), or <u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437, 441 (1987) (costs under Fed. R. Civ. P. 54 limited by § 1920), and that expert testimony was crucial to determine L'Eggs' profits based on the peculiar circumstances of this case and was necessary to protect the copyright.  Thus, Pinkham argues, because one of the purposes of 17 U.S.C. § 505 is compensation, the plain language of "full" should authorize full expert witness fees.

The Supreme Court held in <u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. at 445 (citations omitted):

> We will not lightly infer that Congress has repealed §§ 1920 and 1821, either through Rule 54(d) or any other provision not referring explicitly to witness fees.  As always, "`[w]here there is no *clear* intention otherwise, a specific statute will not be controlled or nullified by a general one regardless of the priority of enactment'" . . . .  Any argument that a federal court is empowered

-6-

to exceed the limitations explicitly set out in §§ 1920 and 1821 without plain evidence of congressional intent to supersede those sections ignores our longstanding practice of construing statutes *in pari materia*.[3]

See also West Virginia Univ. Hosps., Inc. v. Casey, 499 U.S. at 86, 96 (explicit statutory authority to contrary is necessary to exclude witness fees from § 1821(b) limits; expert witness fees not attorney's fees under 42 U.S.C. § 1988).

The parties have not directed us to any authority discussing the source or meaning of "full costs" in 17 U.S.C. § 505.  We do not agree that the "full costs" language "clearly," "explicitly," or "plainly" evidences congressional intent to treat 17 U.S.C. § 505 costs differently from costs authorized in other statutes.  Thus, we conclude costs under 17 U.S.C. § 505 are limited to the costs expressly identified in 28 U.S.C. § 1920, and that expert witness fees in excess of the 28 U.S.C. § 1821(b) $40 limit are not recoverable.

Accordingly, we affirm the order of the district court.

A true copy.

        Attest:

                CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]Statutes "in pari materia" (i.e., upon the same matter or subject) are those having a common purpose.  Black's Law Dictionary 791 (6th ed. 1990).