A96A1853. CRAWFORD et al. v. CRUMP.
(476 SE2d 855)

MCMURRAY, Presiding Judge.

Plaintiff-debtor Kenneth L. Crump, Sr. instituted this petition for injunctive relief, alleging that defendant-creditors Harold R. Crawford and Mary F. Crawford were wrongfully attempting to foreclose on collateral securing a series of loans, pursuant to powers contained in security deeds. Plaintiff admitted the existence of a "verbal agreement between plaintiff and defendant Harold Crawford provid[ing] for the payment of ten percent per annum as an interest rate[; but contended that he] owes to the defendants [only] $64,352.32 plus interest from April 22, 1994[,]" rather than the $127,940.91 as alleged in the notice of foreclosure. The plaintiff further alleged "there is a genuine dispute as to the amount owed to the defendants." The complaint also included an allegation that defendants had "acted in bad faith, have been stubbornly litigious, and have caused plaintiff unnecessary trouble and expense," and demanded expenses of litigation, including attorney fees. Defendants denied the material allegations, although "agree[ing] with the allegations of paragraph 9 of plaintiff's complaint that there is a genuine dispute as to the amount owed." Defendants also raised a "cross claim" as to plaintiff's default on the loans. Defendants alleged "that when you take into account actual monies had and received by plaintiff, deduct payments made at the time made, and apply the correct interest rate,

then the correct amount owing to defendants as of July 27, 1994, is $127,940.91. This was the amount of defendants' demand, is the amount secured by the realty and the amount due defendants as of that date. Defendants are entitled to additional interest from that date."

The trial court rendered a partial judgment in favor of defendants on their counterclaim, to the extent of the $64,352.32 plaintiff admitted owing, while reserving for trial plaintiff's liability, if any, for the claimed amounts exceeding that sum. The trial court also reserved plaintiff's claim for expenses of litigation and attorney fees. In defending against further liability, plaintiff sought to show that the series of loans, never totally memorialized by promissory notes, had been rendered into an "account stated" by a purported statement signed by defendant Harold R. Crawford. Plaintiff's Exhibit 1, dated at the top "4-23-84," appears to be a receipt and recites that defendant Harold R. Crawford had "[r]eceived [plaintiff] Kenneth L. Crump Payment of *Seventy-Five Thousand and no/100 ($75,000.00)* as Partial Payment on Original Note of $100,000.00. [SIGNED] Harold R. Crawford." This writing further recites: "Balance Due . . . 25,000.00 Plus any accrued interest at rate of 10%. [SIGNED] Kenneth L. Crump[, plaintiff]." Below plaintiff's signature is the handwritten date: "4-23-84" and the signature "Doris C. Barfield, Notary Public." There also is a signature "Patsy M. Bond, Witness."

Defendant confirmed that he signed this document and that Ms. Doris Barfield notarized his signature, but denied that this was a statement of account, and contended that, in 1982 when he signed, the date was blank. Defendant considered the document a fraud on himself. Nevertheless, subsequent to signing this document, defendant loaned plaintiff "another $12,000. . . ." When called by defendants, Doris C. Barfield testified that she "did not date it that day. If it was ever dated, it had to be after that, and [she did] not recall ever dating [Plaintiff's Exhibit 1]." Together, plaintiff and defendant Harold R. Crawford "brought the paper in and asked — asked [Doris C. Barfield] to notarize the paper. . . . [She] was asked by them to leave the date out."

Ten years later, in 1994, "the first thing that [plaintiff knew] about [defendant Harold R. Crawford] wanting his money was [when plaintiff] walked to [his] desk one day and [t]here [was] a computer printout off of Doris' calculator . . . and it [came] to $111,000. He[, defendant,] brought it in, [threw] it on [plaintiff's] desk and left it. . . . Two or three months later he[, defendant, came] in with another paper showing $117,000. And, then, he just want[ed] to talk to [plaintiff] about what [plaintiff owed] him." When plaintiff denied owing defendant as much as $129,000, "all he [defendant] could do was call [plaintiff] a 'G--- d--- liar.'"

Plaintiff also introduced the testimony of Arthur T. Anthony, an expert in the field of "forensic document examination." Mr. Anthony concluded that "Doris Barfield prepared the date directly above her name[, . . . but that] the evidence indicated that Doris Barfield did not prepare the date in the upper right . . . of Plaintiff's Exhibit Number 1." Mr. Anthony confirmed that his "examination [would not purport to] reveal *when* the date was written on that document." (Emphasis supplied.) The parties also stipulated, as proof of the reasonable value of plaintiff's counsel's attorney fees, that counsel's "legal fees are $150.00 per hour, and that based upon the trial work and the time needed to prepare this case [was] 100 hours [so] the value of [his] services would be some $15,000." Other expenses of litigation were $2,000 in expert witness fees, $85 in court costs, and $372.10 for the cost of the court reporter or depositions, bringing the total expenses claimed to $17,457.10.

The jury concluded that plaintiff "owes nothing to Defendants on the original debt, and . . . further [found] Plaintiff is entitled to recover of the Defendants $25,000.00 as expenses of litigation including reasonable attorney's fees." Defendants' motion for new trial was denied, and this appeal followed. *Held*:

1. Defendants first contend the trial court "erred in permitting the issue of [OCGA § 13-6-11] expenses of litigation, including attorney fees, to go before the jury." Although this enumeration does not specify any ruling of the trial court alleged to be erroneous, it is apparent that defendants complain of the overruling of their motion for directed verdict.

(a) At the close of plaintiff's case and at the close of all the evidence, defendants moved for a directed verdict as to any damages in the form of expenses of litigation and attorney fees, as purportedly based on the alleged wrongful foreclosure attempt, arguing that plaintiff failed to fulfill a condition precedent, namely a tender in cash or certified funds of the approximately $64,000 plaintiff admittedly owed to defendants.

There was evidence from which the trier of fact could have concluded that plaintiff's tender of the money admittedly owed would have been futile in forestalling litigation. Moreover, it is undisputed that plaintiff made a pre-trial payment of these funds after consenting to a judgment in that amount. The effect of defendants' argument would be to require plaintiff to make a second tender in cash or its equivalent of a substantial sum of money, even though that amount was already paid. In our view, it was not necessary, in order to satisfy the law, to make such an onerous second tender of $64,000. "This would be nonsense. People would laugh at the law if it required any such thing." *Fletcher Guano Co. v. Vorus*, 10 Ga. App. 380, 382 (73 SE 348). See also *Dept. of Transp. v. Gilmore*, 209 Ga. App. 656,

657 (2), 658 (434 SE2d 114).

(b) Defendants further contend there was a bona fide controversy precluding an award of OCGA § 13-6-11 damages on the ground that defendants had been stubbornly litigious, and that there is no evidence of bad faith in the transaction.

The record in the case sub judice contains evidence that defendants employed sham documents in the course of their transaction with plaintiff, and sought from plaintiff a total of approximately $129,000 although plaintiff never received more than $47,000 total from the series of loans.

" '(T)he elements of bad faith which will authorize expenses of litigation in an ex contractu action are those acts relative to the conduct of entering into a contract or to the transaction and dealings out of which the cause of action arose ((cits.)), but do not have reference to the motive with which the defendant defends an action after a cause of action has occurred. (Cit.)' *Edwards-Warren Tire Co. v. Coble*, 102 Ga. App. 106, 111 (2), 113 (115 SE2d 852)." *Kemira, Inc. v. Williams Investigative &c. Svcs.*, 215 Ga. App. 194, 199 (3), 200 (450 SE2d 427). "Since there was some evidence to support a finding that [defendants] acted in bad faith in . . . fraudulently overcharging [plaintiff] under the terms of the [partially parol] contract, the award of attorney fees must be affirmed. See *Clark v. Aenchbacher*, [143 Ga. App. 282, 284 (1) (238 SE2d 442)]; *St. Holmes v. St. Holmes*, 169 Ga. App. 283, 284 (2) (312 SE2d 370) (1983); *Glenn v. Fourteen West Realty*, [169 Ga. App. 549, 551 (313 SE2d 730)]; *Mansell v. Benson Chevrolet Co.*, 165 Ga. App. 568, 570 (5) (302 SE2d 114) (1983)." *Harrell v. Gomez*, 174 Ga. App. 8, 11 (6) (329 SE2d 302). This enumeration is without merit.

2. Next, defendants contend the trial court erred in refusing to reduce the jury's award of OCGA § 13-6-11 expenses of litigation to the amount as stipulated by the parties or else proved by uncontested evidence. Plaintiff replies that the jury is not bound by the stipulated opinion evidence as to the reasonable amount of attorney fees. In our view, this enumeration has merit.

"[A] stipulation by the parties upon which a resolution of [some] issue [is] to be made . . . [is] binding even though it might in some manner contradict or conflict with the pleadings. *Southern R. Co. v. Hodgson Co.*, 148 Ga. 851 (98 SE 541); *Traylor v. Gormley*, 177 Ga. 185 (4) (169 SE 850). Evidence contrary to the stipulation is not admissible; since it is binding, it may not be disproved. *Walden v. Camp*, 206 Ga. 593, 602 (58 SE2d 175); *School Boy Sportwear Corp. v. Cornelia Garment Co.*, 106 Ga. App. 99, 101 (2) (126 SE2d 248), and citations." *Goolsby v. Allstate Ins. Co.*, 130 Ga. App. 881, 882 (1), 883 (204 SE2d 789). In the case sub judice, the jury's award of $25,000 exceeds the outermost range of the evidence, as stipulated

by plaintiff. He is as much bound by that stipulation as the defendants. The judgment of the trial court is affirmed on condition that, within 20 days of the receipt of the remittitur, plaintiff agrees to write down the judgment for OCGA § 13-6-11 expenses of litigation to $17,457.10, the greatest amount authorized by the evidence. Otherwise, the judgment stands reversed.

3. Our disposition in Division 2 renders defendants' remaining contention moot.

*Judgment affirmed on condition, otherwise reversed. Ruffin, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED OCTOBER 9, 1996.

*Thomas & Settle, Ronald B. Thomas*, for appellants.
*John R. Thigpen, Sr.*, for appellee.