(Slip Opinion) OCTOBER TERM, 2019 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## PETER, DEPUTY DIRECTOR, PATENT AND TRADEMARK OFFICE *v.* NANTKWEST, INC.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 18–801.   Argued October 7, 2019—Decided December 11, 2019

The Patent Act provides two mutually exclusive methods for challenging
an adverse decision by the Patent and Trademark Office (PTO). A dis-
satisfied applicant may appeal directly to the Federal Circuit, 35
U. S. C. §141, or, as relevant here, may file a new civil action against
the PTO Director in the United States District Court for the Eastern
District of Virginia, §145. Under this second proceeding, the applicant
must pay "[a]ll the expenses of the proceedings." *Ibid.*

Respondent NantKwest, Inc., filed a §145 civil action after its patent
application was denied. The District Court granted summary judg-
ment to the PTO, and the Federal Circuit affirmed. The PTO moved
for reimbursement of expenses, including the pro rata salaries of PTO
attorneys and a paralegal who worked on the case. The District Court
denied the motion, concluding that the statutory language referencing
expenses was not sufficient to rebut the "American Rule" presumption
that parties are responsible for their own attorney's fees. The en banc
Federal Circuit affirmed.

*Held*: The PTO cannot recover the salaries of its legal personnel under
§145. Pp. 3–10.

(a) The "American Rule"—the bedrock principle that "[e]ach litigant
pays his own attorney's fees, win or lose, unless a statute or contract
provides otherwise," *Hardt* v. *Reliance Standard Life Ins. Co.*, 560
U. S. 242, 253—provides the starting point for assessing whether §145
authorizes payment of the PTO's legal fees. Contrary to the Govern-
ment's view, this Court has never suggested that any statute is exempt
from the presumption against fee shifting or limited its American Rule
inquiries to prevailing party statutes. Rather, it has developed a line
of precedents addressing statutory deviations from the American Rule

that do not limit attorney's fees awards to prevailing parties. See, *e.g., id.,* at 254. The presumption against fee shifting is particularly important here because reading §145 to permit an unsuccessful government agency to recover attorney's fees from a prevailing party "would be a radical departure from longstanding fee-shifting principles adhered to in a wide range of contexts." *Ruckelshaus* v. *Sierra Club*, 463 U. S. 680, 683. Pp. 3–6.

(b) Section 145's plain text does not overcome the American Rule's presumption against fee shifting. Definitions of "expenses," while capacious enough to include attorney's fees, provide scant guidance. The mere failure to foreclose a fee award "neither specifically nor explicitly authorizes courts to shift [fees]." *Baker Botts L. L. P.* v. *ASARCO LLC*, 576 U. S. 121, ___. The complete phrase "expenses of the proceeding" would not have been commonly understood to include attorney's fees at the time §145 was enacted. Finally, the modifier "all" does not transform "expenses" to reach an outlay it would not otherwise include.

In common statutory usage, the term "expenses" alone has never been considered to authorize an award of attorney's fees with sufficient clarity to overcome the American Rule presumption. The appearance of "expenses" and "attorney's fees" together across various statutes indicates that Congress understands the terms to be distinct and not inclusive of each other. See, *e.g.,* 11 U. S. C. §363(n). Other statutes that refer to attorney's fees as a subset of expenses show only that "expenses" can include attorney's fees when so defined. See, *e.g.,* 28 U. S. C. §361. Nor do this Court's cases further the Government's position that the Court has used "expenses" to mean "attorney's fees." See, *e.g., Taniguchi* v. *Kan Pacific Saipan, Ltd.*, 566 U. S. 560, 573.

The Patent Act's history reinforces that Congress did not intend to shift attorney's fees in §145 actions. There is no evidence that the original Patent Office ever paid its personnel from sums collected from adverse parties. Neither has the PTO, until this litigation, sought its attorney's fees under §145. When Congress intended to provide for attorney's fees in the Patent Act, it has stated so explicitly. See, *e.g.,* 35 U. S. C. §285. Pp. 6–10.

898 F. 3d 1177, affirmed.

SOTOMAYOR, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order that
corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 18–801

LAURA PETER, DEPUTY DIRECTOR, PATENT
AND TRADEMARK OFFICE, PETITIONER *v.*
NANTKWEST, INC.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FEDERAL CIRCUIT

[December 11, 2019]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

Section 145 of the Patent Act affords applicants "dissatisfied with the decision of the Patent Trial and Appeal Board" an opportunity to file a civil action in the United States District Court for the Eastern District of Virginia. 35 U. S. C. §145. The statute specifies that "[a]ll the expenses of the proceedings shall be paid by the applicant." *Ibid.* The question presented in this case is whether such "expenses" include the salaries of attorney and paralegal employees of the United States Patent and Trademark Office (PTO). We hold that they do not.

## I
### A

The Patent Act creates two mutually exclusive pathways to challenge an adverse decision by the PTO. The first permits judicial review by direct appeal to the United States Court of Appeals for the Federal Circuit. §141. There is "no opportunity for the applicant to offer new evidence" in a §141 proceeding, and the Federal Circuit "must review the PTO's decision on the same administrative record that was

before the [agency]." *Kappos* v. *Hyatt*, 566 U. S. 431, 434 (2012); 35 U. S. C. §144.

The second pathway allows applicants to file a new civil action against the Director of the PTO in federal district court. §145. Unlike §141, §145 "permits the applicant to present new evidence . . . not presented to the PTO." *Kappos*, 566 U. S., at 435. The district court "acts as a factfinder when new evidence is introduced in a §145 proceeding" and must make *de novo* determinations that take into account "both the new evidence and the administrative record before the PTO." *Id.*, at 444, 446. The parties may appeal the district court's final decision to the Federal Circuit. 28 U. S. C. §1295(a)(4)(C).

Because §145 does not limit an applicant's ability to introduce new evidence to challenge the denial of a patent, *Kappos*, 566 U. S., at 439, it can result in protracted litigation. As a condition for permitting such extensive review, the Patent Act requires applicants who avail themselves of §145 to pay "[a]ll the expenses of the proceedings." 35 U. S. C. §145.

B

After the PTO denied respondent NantKwest, Inc.'s patent application directed to a method for treating cancer, NantKwest filed a complaint against the PTO Director in the Eastern District of Virginia under §145. The District Court granted summary judgment to the PTO, and the Federal Circuit affirmed. *NantKwest, Inc.* v. *Lee*, 686 Fed. Appx. 864 (2017). The PTO moved for reimbursement of expenses that included—for the first time in the 170-year history of §145—the pro rata salaries of PTO attorneys and a paralegal who worked on the case.

The District Court denied the PTO's motion to recover its pro rata legal fees as "expenses" of the §145 proceeding. The court concluded that the statutory language referencing expenses was not clear enough to rebut the "American

Rule"—the background principle that parties are responsible for their own attorney's fees. *NantKwest, Inc.* v. *Lee*, 162 F. Supp. 3d 540, 542 (ED Va. 2016). A divided Federal Circuit panel reversed, with Judge Stoll dissenting. *NantKwest, Inc.* v. *Matal*, 860 F. 3d 1352 (2017). The majority expressed "substantial doub[t]" that §145 even implicated the American Rule's presumption against fee shifting in a case in which the payment was not made to a prevailing party. *Id.,* at 1355. The majority concluded that, even assuming the American Rule presumption applied, the term "expenses" in §145 "specific[ally]" and "explicit[ly]" authorized an award of fees. *Id.*, at 1356.

The en banc Federal Circuit voted *sua sponte* to rehear the case and reversed the panel over a dissent. *NantKwest, Inc.* v. *Iancu*, 898 F. 3d 1177, 1184 (2018). The majority opinion—now authored by Judge Stoll—held that the American Rule presumption applied to §145 because it is "the starting point whenever a party seeks to shift fees from one side to the other in adversarial litigation." *Id.*, at 1184 (citing *Baker Botts L. L. P.* v. *ASARCO LLC*, 576 U. S. 121, \_\_\_ (2015)). After examining the plain text and statutory history of §145, the judicial and congressional understanding of similar language, and overarching policy considerations, the majority concluded that "[a]warding '[a]ll the expenses' simply cannot supply the 'specific and explicit' directive from Congress to shift attorneys' fees, and nothing else in the statute evinces congressional intent to make them available." 898 F. 3d, at 1196 (quoting *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U. S. 240, 260 (1975)). We granted certiorari, 586 U. S. \_\_\_ (2019), and now affirm.

## II

This Court's "'basic point of reference' when considering the award of attorney's fees is the bedrock principle known

as the '"American Rule"': Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U. S. 242, 252–253 (2010) (quoting *Ruckelshaus* v. *Sierra Club*, 463 U. S. 680, 683 (1983)). The American Rule has "roots in our common law reaching back to at least the 18th century." *Baker Botts*, 576 U. S., at ___ (slip op., at 3) (citing *Arcambel* v. *Wiseman*, 3 Dall. 306 (1796)); see also *Summit Valley Industries, Inc.* v. *Carpenters*, 456 U. S. 717, 721 (1982) (observing that the American Rule "has been consistently followed for almost 200 years"); *Alyeska Pipeline*, 421 U. S., at 257 (referring to the presumption against shifting attorney's fees as a "general" rule).

The Government does not dispute this principle or its pedigree, but argues instead that it does not apply at all. Because the American Rule presumption is most often overcome when a statute awards fees to a "prevailing party," the Government maintains, the presumption applies only to prevailing-party statutes. And because §145 requires one party to pay all expenses regardless of outcome, the argument goes, it is not a statute subject to the presumption.

That view is incorrect. This Court has never suggested that any statute is exempt from the presumption against fee shifting. Nor has it limited its American Rule inquiries to prevailing-party statutes. Indeed, the Court has developed a "line of precedents" "addressing statutory deviations from the American Rule that do not limit attorney's fees awards to the 'prevailing party.'" *Hardt*, 560 U. S., at 254; see also *Baker Botts*, 576 U. S., at ___–___ (slip op., at 5–7) (analyzing a bankruptcy provision that did not mention prevailing parties under the American Rule's presumption against fee shifting).

*Sebelius* v. *Cloer*, 569 U. S. 369 (2013), confirms that the presumption against fee shifting applies to all statutes— even those like §145 that do not explicitly award attorney's fees to "prevailing parties." In *Cloer*, the Court interpreted

a provision of the National Childhood Vaccine Injury Act that permitted courts to "award attorney's fees . . . 'incurred [by a claimant] in any proceeding on' an unsuccessful vaccine-injury 'petition . . . brought in good faith [with] a reasonable basis for the claim.'" 569 U. S., at 371 (quoting 42 U. S. C. §300aa–15(e)(1)). The Court held that the provision's clear language authorized attorney's fees, even though the statute exclusively applied to unsuccessful litigants. 569 U. S., at 372.

*Cloer* establishes two points: First, contrary to the Government's suggestion, Congress has indeed enacted fee-shifting statutes that apply to nonprevailing parties. Second, and again contrary to the Government's view, the American Rule applies to such statutes. The Government itself argued in *Cloer* that the presumption against fee shifting applied by default, but maintained that the statute "depart[ed] so far from background principles about who pays a litigant's attorney's fees that it [could not] be justified without a clearer statement than the Act can supply.'" Brief for Petitioner in *Sebelius* v. *Cloer*, O. T. 2012, No. 12–236, p. 32. The Court acknowledged the Government's position but concluded that the "rul[e] of thumb" against fee shifting gave way because the "words of [the] statute [were] unambiguous." *Cloer*, 569 U. S., at 380–381 (citing the Government's brief).

The dissenting en banc Federal Circuit Judges also doubted that the American Rule could apply to a §145 action. They characterized the proceeding as an intermediate step in obtaining a patent and the payment of legal fees as a portion of the application costs. 898 F. 3d, at 1200 (opinion of Prost, J.). Yet §145 has all the marks of the kind of adversarial litigation in which fee shifting, and the presumption against it, is common; the statute authorizes filing a separate civil action where new evidence can be introduced for *de novo* review by a district judge. Thus, the presumption against fee shifting not only applies, but is

particularly important because §145 permits an unsuccessful government agency to recover its expenses from a prevailing party. Reading §145 to award attorney's fees in that circumstance "would be a radical departure from longstanding fee-shifting principles adhered to in a wide range of contexts." *Ruckelshaus*, 463 U. S., at 683.

The American Rule thus provides the starting point for assessing whether §145 authorizes payment of the PTO's legal fees.

### III

To determine whether Congress intended to depart from the American Rule presumption, the Court first "look[s] to the language of the section" at issue. *Hardt*, 560 U. S., at 254 (internal quotation marks omitted). While "[t]he absence of [a] specific reference to attorney's fees is not dispositive," *Key Tronic Corp.* v. *United States*, 511 U. S. 809, 815 (1994), Congress must provide a sufficiently "specific and explicit" indication of its intent to overcome the American Rule's presumption against fee shifting. *Alyeska Pipeline*, 421 U. S., at 260.

### A

The reference to "expenses" in §145 does not invoke attorney's fees with the kind of "clarity we have required to deviate from the American Rule." *Baker Botts*, 576 U. S., at ___ (slip op., at 4).

Definitions of "expenses" provide scant guidance. The term, standing alone, encompasses wide-ranging "expenditure[s] of money, time, labor, or resources to accomplish a result," Black's Law Dictionary 698 (10th ed. 2014), "charges or costs met with in . . . doing one's work," Webster's New World College Dictionary 511 (5th ed. 2014), and "outlay[s]" for labor, Merriam-Webster's Dictionary of Law 180 (1996); see also N. Webster, An American Dictionary of the English Language 319 (3d ed. 1830) (defining the term

broadly to include "the employment and consumption, as of time or labor," or the "disbursing of money"). Though these definitions are capacious enough to include attorney's fees, the mere failure to foreclose a fee award "neither specifically nor explicitly authorizes courts to shift [fees]." *Baker Botts*, 576 U. S., at \_\_\_ (slip op., at 6).

Reading the term "expenses" alongside neighboring words in the statute, however, supports a conclusion excluding legal fees from the scope of §145. The complete phrase "expenses of the proceeding" is similar to the Latin *expensæ litis*, or "expenses of the litigation." This term has long referred to a class of expenses commonly recovered in litigation to which attorney's fees did not traditionally belong. See Black's Law Dictionary 461 (1891) (defining "*expensæ litis*" to mean "generally allowed" costs); 1 J. Bouvier, Law Dictionary 392 (1839) (defining the term to mean the "costs which are generally allowed to the successful party"); *id.*, at 244 (excluding from the definition of "costs" the "extraordinary fees [a party] may have paid counsel"). These definitions suggest that the use of "expenses" in §145 would not have been commonly understood to include attorney's fees at its enactment.

Finally, the modifier "all" does not expand §145's reach to include attorney's fees. Although the word conveys breadth, it cannot transform "expenses" to reach an outlay it would not otherwise include. Cf. *Rimini Street, Inc.* v. *Oracle USA, Inc.*, 586 U. S. \_\_\_, \_\_\_–\_\_\_ (2019) (slip op., at 6–7) ("The adjective 'full' in §505 therefore does not alter the meaning of the word 'costs.' Rather, 'full costs' are all the 'costs' otherwise available under law").

Section 145's plain text thus does not overcome the American Rule's presumption against fee shifting to permit the PTO to recoup its legal personnel salaries as "expenses of the proceedings."

B

"The record of statutory usage" also illustrates how the
term "expenses" alone does not authorize recovery of attor-
ney's fees. See *West Virginia Univ. Hospitals, Inc.* v. *Casey*,
499 U. S. 83, 88 (1991) (looking to statutory usage to deter-
mine whether attorney's fees and expert fees were distinct
expenses in the fee-shifting context).

That "expenses" and "attorney's fees" appear in tandem
across various statutes shifting litigation costs indicates
that Congress understands the two terms to be distinct and
not inclusive of each other. See, *e.g.,* 898 F. 3d, at 1188
(quoting 11 U. S. C. §363(n) (allowing trustee to recover
"any costs, attorneys' fees, or expenses incurred"); 12
U. S. C. §1786(p) (permitting courts to "allow to any such
party such reasonable expenses and attorneys' fees as it
deems just and proper"); 25 U. S. C. §1401(a) (allowing dis-
tribution of funds after payment of "attorney fees and liti-
gation expenses"); 26 U. S. C. §6673(a)(2)(A) (authorizing
recovery of "costs, expenses, and attorneys' fees" against an
attorney who "unreasonably and vexatiously" multiplies
proceedings); 31 U. S. C. §3730(d)(1) (permitting recovery of
"reasonable expenses . . . plus reasonable attorneys' fees
and costs"); 38 U. S. C. §4323(h)(2) (allowing courts to
award "reasonable attorney fees, expert witness fees, and
other litigation expenses") (all internal quotation marks
omitted)).

While some other statutes refer to attorney's fees as a
subset of expenses, they show only that "expenses" can in-
clude attorney's fees when so defined. See, *e.g.,* 28 U. S. C.
§361 (authorizing "reasonable expenses, including attor-
neys' fees"); §1447(c) ("An order remanding the case may
require payment of just costs and any actual expenses, in-
cluding attorney fees, incurred as a result of the removal");
29 U. S. C. §1370(e)(1) ("[T]he court in its discretion may
award all or a portion of the costs and expenses incurred in
connection with such action including reasonable attorney's

fees”); 42 U. S. C. §247d–6d(e)(9) (allowing a party to re-cover “reasonable expenses incurred . . . , including a rea-sonable attorney’s fee”).

The Government cites several decisions to argue how, on occasion, this Court has used the term “expenses” to mean “attorney’s fees.” None of the cases furthers its position. See, *e.g.*, *Rimini Street*, 586 U. S., at ___, ___ (slip op., at 4, 11) (reasoning that the term “costs” in the general federal costs statutes does not include attorney’s fees); *Taniguchi* v. *Kan Pacific Saipan, Ltd.*, 566 U. S. 560, 573 (2012) (men-tioning that a party may bear “expenses” related to attor-neys, without specifying whether these “expenses” include attorney’s fees); *Arlington Central School Dist. Bd. of Ed.* v. *Murphy*, 548 U. S. 291, 297–303 (2006) (distinguishing “at-torney’s fees” from “costs” and “costs” from “expenses,” without indicating whether “expenses” encompasses attor-ney’s fees); *Casey*, 499 U. S., at 99 (suggesting that an ex-plicit reference to “expert witness fees” or “litigation ex-penses” could shift expert fees in addition to attorney’s fees—not that the term “litigation expenses” alone could shift attorney’s fees).

Simply put, in common statutory usage, the term “ex-penses” alone has never been considered to authorize an award of attorney’s fees with sufficient clarity to overcome the American Rule presumption.

## C

In fact, the Patent Act’s history reinforces that Congress did not intend to shift fees in §145 actions.

There is no evidence that the Patent Office, the PTO’s predecessor, originally paid its personnel from sums col-lected from adverse parties in litigation, or that the Office initially even employed attorneys. See Act of July 4, 1836, §9, 5 Stat. 121 (“[T]he moneys received into the Treasury under this act shall constitute a fund for the payment of the salaries of the officers and clerks herein provided for, and

all other expenses of the Patent Office, and to be called the patent fund"). That salaries of PTO employees might have qualified as an "expense" of the agency, however, does not mean that they are an "expense" of a §145 proceeding. Neither has the PTO, until this litigation, sought its attorney's fees under §145. That the agency has managed to pay its attorneys consistently suggests that financial necessity does not require reading §145 to shift fees, either.

In later years, when Congress intended to provide for attorney's fees in the Patent Act, it stated so explicitly. See, *e.g.*, 35 U. S. C. §285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party"); §271(e)(4) ("[A] court may award attorney fees under section 285"); §273(f) (same); §296(b) (same); §297(b)(1) ("Any customer . . . who is found by a court to have been injured by any material false or fraudulent statement . . . may recover . . . reasonable costs and attorneys' fees"). Because Congress failed to make its intention similarly clear in §145, the Court will not read the statute to "contravene fundamental precepts of the common law." *United States* v. *Rodgers*, 461 U. S. 677, 716 (1983).

The history of the Patent Act thus reaffirms the Court's view that the statute does not specifically or explicitly authorize the PTO to recoup its lawyers' or paralegals' pro rata salaries in §145 civil actions.

*  *  *

For the foregoing reasons, we conclude that the PTO cannot recover the pro rata salaries of its legal personnel under §145 and therefore affirm the judgment of the Court of Appeals for the Federal Circuit.

*It is so ordered.*