# United States Court of Appeals for the Federal Circuit

---

**GILBERT P. HYATT,**
*Plaintiff-Appellee*

**v.**

**ANDREW HIRSHFELD, PERFORMING THE FUNCTIONS AND DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Defendant-Appellant*

---

2020-2321, 2020-2323, 2020-2324, 2020-2325

---

Appeals from the United States District Court for the District of Columbia in Nos. 1:05-cv-02310-RCL, 1:09-cv-01864-RCL, 1:09-cv-01869-RCL, 1:09-cv-01872-RCL, Senior Judge Royce C. Lamberth.

---

OPINION ISSUED:  August 18, 2021
OPINION MODIFIED:  October 12, 2021

---

ANDREW M. GROSSMAN, Baker & Hostetler LLP, Washington, DC, argued for plaintiff-appellee.  Also represented by MARK W. DELAQUIL, SEAN SANDOLOSKI.

MOLLY R. SILFEN, Office of the Solicitor, United States

Patent and Trademark Office, Alexandria, VA, argued for defendant-appellant. Also represented by MICHAEL S. FORMAN, THOMAS W. KRAUSE, FARHEENA YASMEEN RASHEED.

_____

Before MOORE, *Chief Judge*, REYNA and HUGHES, *Circuit Judges*.

HUGHES, *Circuit Judge*.

After adverse results in proceedings at the Patent and Trademark Office, Gilbert Hyatt sued under 35 U.S.C. § 145 in district court for award of several patents. The district court initially ordered the PTO to issue some of these patents and awarded attorney's fees to Mr. Hyatt as a prevailing party. The district court also denied the PTO's request for expert witness fees under § 145, holding that the statute's shifting of "[a]ll the expenses of the proceedings" to the applicant does not overcome the American Rule presumption against shifting expert fees. On appeal, the PTO challenges both the award of attorney's fees to Mr. Hyatt and the denial of its expert witness fees. Because we previously vacated and remanded the district court's decision ordering the issuance of patents, Mr. Hyatt is no longer a prevailing party, and we vacate the award of attorney's fees. We affirm the district court's denial of expert fees because § 145 does not specifically and explicitly shift expert witness fees.

I

Mr. Hyatt is a prolific patent filer and litigant. In 1995 alone, Mr. Hyatt filed "hundreds of extraordinarily lengthy and complex patent applications," including the four at issue here. *Hyatt v. Iancu*, Nos. 1:05-CV-2310-RCL, 1:09-CV-1864-RCL, 1:09-CV-1869-RCL, 1:09-CV-1872-RCL, 2020 WL 4219844, at *1 (D.D.C. July 23, 2020) (*Decision*). We recently chronicled the ensuing conflict between Mr. Hyatt and the PTO, noting that he "adopted an approach to

prosecution that all but guaranteed indefinite prosecution delay." *Hyatt v. Hirshfeld* (*Hyatt I*), 998 F.3d 1347, 1368 (Fed. Cir. 2021). The examination of these patents has cost the PTO millions of dollars. *Id.* at 1370.

After adverse results at the PTO regarding the patents at issue here, Mr. Hyatt sued the PTO under 35 U.S.C. § 145, which allows a patent applicant to challenge a PTO decision in district court. *Decision*, 2020 WL 4219844, at \*1. The PTO moved to dismiss the actions for prosecution laches, a defense that "render[s] a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution that constitutes an egregious misuse of the statutory patent system under a totality of the circumstances." *Hyatt I*, 998 F.3d at 1360 (citation omitted). The district court rejected the PTO's arguments and ordered the PTO to issue a patent covering some of the claims in Mr. Hyatt's applications. *Decision*, 2020 WL 4219844, at \*1. The PTO appealed to this court. *Id.* at \*2.

While *Hyatt I* was pending at this court, Mr. Hyatt sought his attorney's fees under the Equal Access to Justice Act (EAJA). *Id.* at \*1. This statute allows a court to grant fees under certain circumstances, provided that the party seeking fees is a "prevailing party." 28 U.S.C. § 2412(b). The district court granted this motion in part, based on Mr. Hyatt's original victory in the district court. We subsequently vacated and remanded in *Hyatt I*, holding that the PTO had carried its initial burden of demonstrating prosecution laches. 998 F.3d at 1372. Accordingly, the PTO contends that Mr. Hyatt is not a prevailing party and therefore is not entitled to attorney's fees. Appellant's Br. 31.

Meanwhile, the PTO sought reimbursement of its expert witness fees in *Hyatt I*. *Decision*, 2020 WL 4219844, at \*1. In an action under 35 U.S.C. § 145, "[a]ll the expenses of the proceedings shall be paid by the applicant," and the PTO cited an unbroken line of district court opinions awarding expert fees under the statute. *Decision*, 2020 WL

4219844, at *5. The district court noted that the cited cases lacked reasoning regarding the American Rule presumption against fee-shifting, and that recent Supreme Court precedent has emphasized that presumption. The district court denied expert fees and the PTO now appeals.

## II

As an initial matter, we vacate the district court's holding that Mr. Hyatt is entitled to attorney's fees under 28 U.S.C. § 2412(b). After our remand in *Hyatt I*, Mr. Hyatt cannot be considered a prevailing party. Our holding on this point will not come as a surprise to the district court. *See Decision*, 2020 WL 4219844, at *4 ("The Court acknowledges that the PTO has appealed its prosecution [laches] decision. If the PTO prevails on appeal, Mr. Hyatt will not be entitled to the fees the Court awards here." (citation omitted)). We vacate and remand for further proceedings in light of our decision in *Hyatt I*.

## III

We next proceed to the central issue in this appeal: whether 35 U.S.C. § 145's language that "[a]ll the expenses of the proceedings shall be paid by the applicant" requires that the applicant pay the expert witness fees of the PTO. The district court held that the statute was not sufficiently explicit to overcome the presumption against fee-shifting, and we review that statutory interpretation de novo. *Broadcast Innovation, L.L.C. v. Charter Commc'ns, Inc.*, 420 F.3d 1364, 1366 (Fed. Cir. 2005). Because we hold that § 145 is not sufficiently specific to overcome the presumption against fee-shifting, we affirm.

## A

After receiving an adverse decision from the Patent Trial and Appeal Board, a patent applicant has two mutually exclusive options for judicial review. The typical route

is to appeal directly to this court under 35 U.S.C. § 141.[1] Section 141 review is cabined to the administrative record, and factual determinations of the Board are set aside "only if they are unsupported by substantial evidence." *Kappos v. Hyatt*, 566 U.S. 431, 434–35 (2012) (citation omitted). Alternatively, the applicant may file a civil action in federal district court under 35 U.S.C. § 145, as Mr. Hyatt did here.[2] Review under § 145 is more expansive, allowing the district court to hear new evidence and make de novo factual determinations. *Peter v. NantKwest, Inc.*, 140 S. Ct. 365, 369 (2019). To pursue this more burdensome and circuitous route, the applicant must be willing to shoulder "[a]ll the expenses of the proceedings," including the PTO's expenses. 35 U.S.C. § 145.

Congress enacted § 145's predecessor in 1839, requiring an applicant to pay "the whole of the expenses of the proceeding . . . whether the final decision shall be in his favor or otherwise." Act of Mar. 3, 1839, ch. 88, § 10, 5 Stat. 353, 354. The wording remains the same in all meaningful respects today. In 1870, Congress considered changing the word "expenses" to "costs," but the proposal failed. *See NantKwest, Inc. v. Iancu*, 898 F.3d 1177, 1194 (Fed. Cir. 2018). Since the 1980s, the PTO has relied on the language

---

[1]    "An applicant who is dissatisfied with the final decision in an appeal to the Patent Trial and Appeal Board under section 134(a) may appeal the Board's decision to the United States Court of Appeals for the Federal Circuit. By filing such an appeal, the applicant waives his or her right to proceed under section 145." 35 U.S.C. § 141(a).

[2]    "An applicant dissatisfied with the decision of the Patent Trial and Appeal Board . . . may, unless appeal has been taken to the United States Court of Appeals for the Federal Circuit, have remedy by civil action against the Director in . . . United States District Court . . . ." 35 U.S.C. § 145.

in § 145 shifting "expenses" to recover expert fees from applicants. We are tasked with determining whether this reliance was warranted.

B

We start with the American Rule presumption. *See NantKwest*, 140 S. Ct. at 370–71 (emphasizing the centrality of the American Rule in analysis of fee-shifting statutes). This presumption requires that litigants pay their own fees "unless a statute or contract provides otherwise." *Id.* at 370 (citation omitted). "Congress must provide a sufficiently 'specific and explicit' indication of its intent to overcome the American Rule's presumption against fee shifting." *Id.* at 372 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 (1975)).

In *NantKwest*, the Supreme Court applied the American Rule to § 145. *Id.* "[T]he presumption against fee shifting applies to all statutes—even those like § 145 that do not explicitly award attorney's fees to 'prevailing parties.'" *Id.* at 371. And while the focus of the Supreme Court's inquiry in *NantKwest* was attorney's fees, the American Rule similarly applies to expert witness fees. *See Kansas v. Colorado*, 556 U.S. 98, 102–03 (2009) ("[T]he American Rule applies not only to attorney's fees but also other costs of litigation, including expert witness fees." (citing *Alyeska Pipeline*, 421 U.S. 240)).

No magic words are needed to override the American Rule, but the requirement that Congressional intent be specific and explicit is a high bar. *See Key Tronic Corp. v. United States*, 511 U.S. 809, 815–21 (1994) (noting that "[t]he absence of [a] specific reference to attorney's fees is not dispositive [as to attorney's fees shifting] if the statute otherwise evinces an intent to provide for such fees," but holding that the words "any . . . necessary costs of response," including "enforcement activities," were not explicit enough to invoke fees related to private actions); *NantKwest*, 898 F.3d at 1182. For example, the Supreme

Court held that where a statute shifted a "reasonable attorney's fee," it was clear that Congress intended to override the American Rule with regard to attorney's fees, but the language was not specific enough to also shift expert witness fees. *See W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 102 (1991). Vague terms like "costs" are also not enough. *See, e.g., Summit Valley Indus. Inc. v. Loc. 112, United Brotherhood of Carpenters & Joiners of Am.*, 456 U.S. 717, 727 (1982) (declining to award attorney's fees under a statute shifting "the damages . . . sustained and the cost of the suit"); *F. D. Rich Co. v. U.S. for Use of Indus. Lumber Co.*, 417 U.S. 116, 128–31 (1974) (declining to award attorneys' fees under a statute authorizing recovery of "sums justly due"); *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 720–21 (1967) (declining to award attorney's fees under a statute authorizing shifting the "costs of the action"). The Supreme Court has listed EAJA as "a good example of the clarity . . . required to deviate from the American Rule." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (citing 28 U.S.C. § 2412(d)(1)(A)). There, the statute shifts "fees and other expenses," § 2412(d)(1)(A), but also clarifies that "'fees and other expenses' includes the reasonable expenses of expert witnesses . . . and reasonable attorney fees," § 2412(d)(2)(A).

## C

The Supreme Court's *NantKwest* decision guides our analysis here. There, in interpreting the same § 145 language at issue here, the Court held that the reference to "expenses" does not invoke attorney's fees with enough clarity to overcome the American Rule. *See NantKwest*, 140 S. Ct. at 372–73. Although the Court's holding that attorney's fees are not shifted does not inherently dictate that expert fees cannot be shifted, *see Casey*, 499 U.S. at 88–92 (analyzing attorney's fees and expert fees separately), much of the Court's reasoning in *NantKwest* applies equally with respect to expert fees.

The Court began by noting that dictionary "[d]efinitions of 'expenses' provide scant guidance." *NantKwest*, 140 S. Ct. at 372. Both modern and historical definitions of the term tend to be broad. *See, e.g.*, *Expense*, BLACK'S LAW DICTIONARY 698 (10th ed. 2014) (defining expense as "an expenditure of money, time, labor, or resources to accomplish a result"); N. WEBSTER, AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE 319 (3d ed. 1830) (defining expenses to include "the employment and consumption, as of time or labor," or the "disbursing of money"). "Though these definitions are capacious enough to include attorney's fees, the mere failure to foreclose a fee award neither specifically nor explicitly authorizes courts to shift fees." *NantKwest*, 140 S. Ct. at 372 (citation omitted). These definitions provide no more guidance regarding whether "expenses" include expert fees than they do for attorney's fees.

Next, the Supreme Court considered the full phrase, "expenses of the proceeding," noting that the phrase "is similar to the Latin *expensæ litis*, or 'expenses of the litigation.'" *Id.* In the 1830s, when the relevant language in § 145 was introduced, a contemporary dictionary defined *expensæ litis* as "expenses of the suit, the costs which are generally allowed to the successful party." 1 J. BOUVIER, LAW DICTIONARY 392 (1839). That dictionary also excluded from the meaning of "costs" "those expenses which [a party] may have incurred for himself [and] the extraordinary fees he may have paid counsel." *Id.* at 244. The Court held that "[t]hese definitions suggest that the use of 'expenses' in § 145 would not have been commonly understood to include attorney's fees at its enactment." *NantKwest*, 140 S. Ct. at 372. The same logic applies to expert witness fees, which, like attorney's fees, are not "costs . . . generally allowed to the successful party." 1 J. BOUVIER, LAW DICTIONARY 392 (1839); *see, e.g.*, *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006) ("[N]o statute will be construed as authorizing the taxation of

witness fees as costs unless the statute refers explicitly to witness fees." (citation omitted)).

The Court in *NantKwest* also emphasized that when Congress has intended to include attorney's fee-shifting in a statute, it has referred to them explicitly. *NantKwest*, 140 S. Ct. at 373 ("That 'expenses' and 'attorney's fees' appear in tandem across various statutes shifting litigation costs indicates that Congress understands the two terms to be distinct and not inclusive of each other."). The same is true of expert witness fees. *See, e.g.*, 5 U.S.C. § 504(b)(1)(A) ("reasonable expenses of expert witnesses . . . and reasonable attorney or agent fees"); 6 U.S.C. § 1142(c)(3)(C) ("costs and expenses (including attorney and expert witness fees)"); 10 U.S.C. § 2409(c)(1)(C) ("costs and expenses (including attorneys' fees and expert witnesses' fees)"); 12 U.S.C. § 5567(c)(4)(B)(ii) ("costs and expenses (including attorney fees and expert witness fees)"); 15 U.S.C. § 2087(b)(3)(B)(iii) ("costs and expenses (including attorneys' and expert witness fees)"); 21 U.S.C. § 399d(b)(3)(C) ("costs and expenses (including attorneys' and expert witness fees)"); 26 U.S.C. § 7430(c)(1) ("reasonable expenses of expert witnesses . . . and reasonable fees paid . . . for the services of attorneys"); 38 U.S.C. § 4323(h)(2) ("reasonable attorney fees, expert witness fees, and other litigation expenses"); 41 U.S.C. §§ 4705(d)(1)(C) ("costs and expenses (including attorneys' fees and expert witnesses' fees)"), 4712(c)(1)(C) ("costs and expenses (including attorneys' fees and expert witnesses' fees)"); 42 U.S.C. §§ 7622(b)(2)(B) ("costs and expenses (including attorneys' and expert witness fees)"), 5851(b)(2)(B) ("costs and expenses (including attorneys' and expert witness fees)"); 45 U.S.C. § 726(f)(9) (shifting "costs and expenses (including reasonable fees of accountants, experts, and attorneys)"); 49 U.S.C. §§ 30171(b)(3)(C) ("costs and expenses (including attorneys' and expert witness fees)"), 60129 ("expenses (including attorney's and expert witness fees)"), 42121(b)(3)(B)(iii) ("costs and expenses (including

attorneys' and expert witness fees)"). These statutes each list expert fees as a subset of the term "expenses," but that does not mean that the broad term *always* includes expert fees. Instead, it shows that "expenses" includes expert fees "when so defined." *NantKwest*, 140 S. Ct. at 373.

The central logic of *NantKwest* is applicable to our decision here, indicating that § 145 does not shift expert witness fees. The American Rule sets a high bar that vague definitions cannot overcome, particularly considering the many instances in which Congress has explicitly shifted expert fees. We therefore affirm the district court's holding that the PTO is not entitled to reimbursement of its expert witness fees.

D

We understand that this is a close case. There are many arguments that the phrase "[a]ll the expenses of the proceedings" should be understood to include expert fees. Indeed, many of these arguments apply to expert fees in a way that they do not apply to attorney's fees, making this case a closer one than *NantKwest*. But the American Rule sets a high bar, and we find none of these arguments sufficiently specific and explicit to override the presumption against fee shifting.

1

On a couple of occasions, in dicta, the Supreme Court has "suggest[ed] that an explicit reference to . . . 'litigation expenses' could shift expert fees." *See NantKwest*, 140 S. Ct. at 373–74 (citing *Casey*, 499 U.S. at 99 ("Congress could easily have shifted 'attorney's fees and expert witness fees,' or 'reasonable litigation expenses,' as it did in contemporaneous statutes; it chose instead to enact more restrictive language, and we are bound by that restriction.")); *see also Arlington Cent. Sch. Dist. Bd. of Educ.*, 548 U.S. at 297 ("'The use of [the term 'costs'], rather than a term such as 'expenses,' strongly suggests that

§ 1415(i)(3)(B) was not meant to be an open-ended provision [shifting] all expenses incurred by prevailing parents in connection with an IDEA case—for example, travel and lodging expenses or lost wages . . . ."). The PTO argues that, because the American Rule does not require magic words, these lines indicate that "expenses" is among the terms that are sufficient to overcome the American Rule with respect to expert fees. However, while these individual sentences may cut in that direction, their persuasive value is outweighed by the direct and recent precedent in *NantKwest*. In *Casey* and *Arlington School Board*, the Court mentioned, without deciding, that other terms, like "expenses," might overcome the American Rule, but when analyzing the specific statute at issue here, the Court held that "expenses" was not sufficiently clear to overcome the presumption. *NantKwest*, 140 S. Ct. at 372–74. Therefore, we think the best interpretation of Supreme Court precedent is that the phrase "expenses of the proceedings" does not shift expert witness fees "with the kind of clarity [the Supreme Court has] required to deviate from the American Rule." *Id.* at 372 (citation omitted).

2

The PTO also emphasizes that district courts have been awarding expert witness fees under this statute ever since the PTO began using experts. *See NantKwest*, 898 F.3d at 1180–81; *e.g., Sandvik Aktiebolag v. Samuels*, Civ. A. No. 89-3127-LFO, 1991 WL 25774 (D.D.C. Feb. 7, 1991); *Halozyme, Inc. v. Iancu*, No. 1:16-CV-1580-CMH, 2018 WL 5270329, at *1 (E.D. Va. Oct. 23, 2018) ("Expenses are commonly understood to encompass printing, travel, and expert witness costs." (citation omitted)); *Taylor v. Matal*, No. 1:15-cv-1607-LMB, 2017 WL 5147147, at *5 (E.D. Va. Nov. 6, 2017) ("It is well settled that the term 'expenses' as used in § 145 encompasses the costs associated with court reporters, transcription, printing, travel expenses, and expert witnesses."); *Realvirt, LLC v. Lee*, 220 F. Supp. 3d 704, 706 (E.D. Va. 2016). Unlike in

*NantKwest*, where the PTO requested attorney's fees "for the first time in the 170-year history of § 145," *NantKwest*, 140 S. Ct. at 370, here the PTO has a long history of receiving expert witness fees under the statute. But longstanding practice is not enough to overcome the American Rule presumption.

The PTO argues that this difference in historical practice distinguishes this case from *NantKwest*, but historical practice did not drive the Supreme Court's reasoning in that case. Rather, the Court focused on the language of the statute and the centrality of the American Rule in analyzing fee-shifting provisions. *Id.* at 370–74.

Congress has reenacted the language at issue here multiple times since district courts began awarding fees, but these reenactments were not an explicit endorsement of that interpretation. *See id.* at 372 (requiring a "specific and explicit" indication from Congress to overcome the American Rule (quoting *Alyeska Pipeline*, 421 U.S. at 260)). To be sure, reenactment of a statute can be relevant in interpreting that statute. *See Pierce v. Underwood*, 487 U.S. 552, 567 (1988) ("[R]eenactment, of course, generally includes the settled judicial interpretation." (citing *Lorillard v. Pons*, 434 U.S. 575, 580–81 (1978))); *Georgia v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498, 1510 (2020) ("[W]e are particularly reluctant to disrupt precedents interpreting language that Congress has since reenacted."); *but see Merck & Co. v. Reynolds,* 559 U.S. 633, 659 (2010) (Scalia, J., concurring) (stating that this rule only applies "if all (or nearly all) of the Circuits" have interpreted statutory language the same way). But this canon regarding Congress's *implicit* acceptance of judicial interpretations loses much of its force in the context of fee-shifting statutes, which require an *explicit* indication of Congress's intent. Moreover, while the practice of district courts awarding expert fees under § 145 is longstanding, the PTO does not cite any district court opinion that has reasoned why "expenses" is a clear enough invocation of expert fees to overcome the

American Rule. And there is no Federal Circuit precedent clearly endorsing this practice. The premise that Congress is aware of a particular judicial interpretation is less compelling when the issue has been primarily uncontested. For these reasons, the historical practice of awarding expert fees is not enough to create the specific and explicit indication needed under the American Rule to shift fees.

3

The PTO points to other statutes where the term "expenses" has been interpreted to include expert witness fees as evidence that the term consistently includes expert fees. *See, e.g.*, *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002) ("[T]he term 'litigation expenses' normally encompasses expert witness fees. . . ."). But while these cases cut in that direction, the Supreme Court's opinion in *NantKwest* countered much of the logic behind these cases.

For example, an almost identical provision regarding eminent domain proceedings has been understood to shift expert witness fees. *See* 33 U.S.C. § 593 ("*[A]ll expenses of said proceedings* and any award that may be made thereunder shall be paid by such State, or . . . public agency as aforesaid . . . ." (emphasis added)); *United States v. 254.35 Acres of Land in Caddo Par., La.*, 46 F. Supp. 913, 915–16 (W.D. La. 1942). The Western District of Louisiana interpreted 33 U.S.C. § 593, stating that:

> 'All expenses of said proceedings' is the language; we note the 'all', and we also note the 'said proceedings'. This is ordinary English, and from the layman's lexicon 'all expenses' would certainly be inclusive of the ordinary court costs, the ordinary witness fees, and also the fees of expert witnesses of both parties to the expropriation proceedings. The legal meaning of the words 'all expenses' is certainly more inclusive than court costs, which generally include witness fees, ordinary and expert.

*Id.* (citation omitted). But the logic of this district court opinion mirrors reasoning rejected by the Supreme Court in *NantKwest*. *See* 140 S. Ct. at 372–73 ("Although the word ['all'] conveys breadth, it cannot transform 'expenses' to reach an outlay it would not otherwise include."); *id.* at 372 (citing a dictionary from the era of § 145's enactment which indicated that "expenses of the litigation" was synonymous with "costs . . . generally allowed to the successful party," which does not include expert fees).

The Ninth Circuit addressed the American Rule in an opinion awarding expert witness fees under a phrase shifting "litigation expenses" in the Americans with Disabilities Act. *Lovell*, 303 F.3d at 1058–59 (noting that "express statutory authority" is required "for shifting expert witness fees," and holding that "litigation expenses" refers to such fees (citation omitted)). But there, the court found sufficiently clear indicators in the legislative history that Congress intended to shift expert witness fees. *Id.*; see H.R. Rep. No. 101–485(III), at 73 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 496 (Report of the Committee on the Judiciary) ("Litigation expenses include the costs of expert witnesses. This provision explicitly incorporates the phrase 'including litigation expenses' to respond to rulings of the Supreme Court that items such as expert witness fees, travel expenses, etc., be explicitly included if intended to be covered under an attorney's fee provision."); H.R. Rep. No. 101–485(II), at 140 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 423 (Report of the Committee on Education and Labor) ("Litigation expenses include the costs of experts and the preparation of exhibits."). Thus, while the Ninth Circuit's opinion may indicate that Congress sometimes uses phrases like "litigation expenses" to shift expert fees, the ADA is a statute where Congressional intent is far clearer than here. Even assuming that legislative history could be enough to overcome the explicitness requirement of the American Rule, in § 145 there is no similar history. Indeed, at the time of enactment, the PTO did not use

experts in litigation. Because the Patent Act lacks the clear indications of legislative intent present in the ADA, the reasoning of the Ninth Circuit is largely inapplicable to the case at hand.

Several other state and district courts have understood statutes awarding "expenses" to shift expert fees. *See, e.g.*, *N. Wyo. Surgical Ctr., LLC v. ASC Mgmt., LLC*, No. 05-CV-230-D, 2007 WL 9700885 (D. Wyo. Mar. 29, 2007) (awarding expert witness fees despite deeming the word "expenses" not to include attorney's fees (citing WYO. STAT. § 17-15-104(a)(xi) (2007) ("expenses actually and reasonably incurred"))); *Crawford v. Crump*, 476 S.E.2d 855, 857–58 (Ga. Ct. App. 1996) (enumerating expert witness fees as claimed § 13-6-11 expenses (citing Ga. Code Ann. § 13-6-11 ("The expenses of litigation")))); *Cox Enters., Inc. v. News-J. Corp.*, No. 6:04-CV0-698-ORL-28KRS, 2009 WL 10669714 (M.D. Fla. Aug. 11, 2009) (discussing the award of expert witness fees under 28 U.S.C. § 1927 ("costs, expenses, and attorneys' fees reasonably incurred")). However, these interpretations have the same deficiencies as the past opinions interpreting § 145: none consider the relevance of the American Rule. Cases like these indicate that the impact of *NantKwest* may be wide-reaching, but that does not alter our responsibility to faithfully apply *NantKwest* and the American Rule here.

4

The PTO argues that the term "expenses" must be broader than "costs," and that it therefore must encompass expert witness fees. This is a variation of an argument we encountered and rejected in *NantKwest*. 898 F.3d at 1194–95.

The PTO argues that the legislative history of § 145 shows that Congress intended to distinguish expenses and costs. During amendments to the act in 1870, the House proposed changing the word "expenses" to "costs" and

limiting the costs to $25. But the Senate rejected that change. *NantKwest*, 898 F.3d at 1194–95.

A potential difference between "costs" and "expenses" is also demonstrated by numerous statutes independently listing costs and expenses. *See, e.g.*, 10 U.S.C. § 2409(c)(1)(C) ("an amount equal to the aggregate amount of all costs and expenses (including attorneys' fees and expert witnesses' fees)"); 15 U.S.C. § 2310(d)(2) (permitting recovery of "a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended)"); 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses . . . ."); 29 U.S.C. § 1370(e)(1) ("[T]he court in its discretion may award all or a portion of the costs and expenses incurred in connection with such action . . . ."); 30 U.S.C. § 938(c) ("a sum equal to the aggregate amount of all costs and expenses (including the attorney's fees)"); 33 U.S.C. § 1367(c) ("[A] sum equal to the aggregate amount of all costs and expenses (including the attorney's fees) . . . shall be assessed . . . ."); 41 U.S.C. § 4705(d)(1)(C) (noting that head of agency may "[o]rder the contractor to pay the complainant an amount equal to the aggregate amount of all costs and expenses (including attorneys' fees and expert witnesses' fees) that the complainant reasonably incurred").

The PTO argues that if "expenses" are broader than "costs," but "expenses" do not, as the Supreme Court held, include attorney's fees, then it is difficult to imagine an interpretation of "expenses" that would not cover expert witness fees. But we need not determine the precise contours of the term "expenses" here. *See NantKwest*, 898 F.3d at 1194–95. Instead, we must determine whether the term is a specific and explicit invocation of expert witness fees. As we have explained above, the statutory text is not sufficiently specific and explicit to overcome the presumption against shifting fees. What Congress intended to include in "expenses" beyond "costs" will have to be determined in

subsequent cases; we conclude that it does not include expert fees.

5

Finally, the PTO argues that a decision denying expert witness fees would have negative ramifications. In addition to overturning decades of district court practice, denying expert fees here might increase the cost of patent applications. Appellant's Br. at 9. ("Congress has mandated that the USPTO be self-funded, where patent application fees are set to cover the agency's costs. With millions of dollars of projected additional out-of-pocket payments to expert witnesses in § 145 actions, the money will have to come from other users of the patent system.").

While it is true that the overall structure of the patent system is designed for applicants to bear the costs of their patent applications, this general principle does not supply the specific and explicit indication of fee-shifting required by the American Rule. And regardless, we question the extent to which expert fees in § 145 cases would have a significant impact on the PTO's budget. *See* Brief of Amicus Curiae IEEE-USA in Support of Respondent at 1a–4a, *Peter v. NantKwest*, 140 S. Ct. 365 (2019) (No. 18-801), 2019 WL 3523689 (noting that from 2009 to 2019, only 21 cases under § 145 reached adjudication where a PTO witness report might be submitted).

We do not lightly overturn decades of practice in federal district courts. But the phrase "[a]ll the expenses of the proceedings" in § 145 does not specifically and explicitly invoke expert witness fees. Accordingly, we affirm.

IV

Because Mr. Hyatt was not a prevailing party in *Hyatt I*, we vacate the award of attorney's fees and remand for further proceedings consistent with our opinion in that case. And because the phrase "[a]ll the expenses of the proceedings" in § 145 does not invoke expert witness fees with

the clarity required to overcome the American Rule presumption against fee-shifting, we affirm the district court's denial of the PTO's request for expert witness fees.

**AFFIRMED IN PART AND VACATED AND REMANDED IN PART**

COSTS

No costs.